CLARK DOUGLAS MONIN, PLAINTIFF v. PEERLESS INSURANCE COMPANY, ALL-STATE INSURANCE COMPANY, AND ALLSTATE INDEMNITY COMPANY, DEFENDANTS

No. COA02-1105

(Filed 5 August 2003)

## 1. Insurance— motor vehicle—insurance policy—residence—judgment notwithstanding verdict

A de novo review revealed that the trial court erred by granting judgment notwithstanding the verdict for plaintiff insured in a declaratory judgment action seeking motor vehicle liability insurance coverage, because testimony at trial established by more than a scintilla of evidence that plaintiff did not reside at his father's residence and was therefore not entitled to coverage under his father's policy.

## 2. Appeal and Error— appealability—sufficiency of notice of appeal

The Court of Appeals did not have jurisdiction to hear plaintiff insured's cross-appeal assigning as error the trial court's failure to use his requested special instructions and the trial court's failure to give a peremptory instruction in a declaratory judgment action seeking motor vehicle liability insurance coverage, because: (1) plaintiff's notice of appeal was faulty; and (2) it cannot be fairly inferred from the face of the notice of appeal that

plaintiff intended to appeal from anything other than the judgment notwithstanding the verdict.

Appeal by defendant Peerless Insurance Company and cross-appeal by plaintiff from judgment notwithstanding the verdict entered 2 April 2002 by Judge J. Gentry Caudill in Superior Court, Mecklenburg County. Heard in the Court of Appeals 15 May 2003.

*John E. Hodge, Jr., for plaintiff.*

*Dean & Gibson, L.L.P., by Thomas G. Nance, for defendant Peerless Insurance Company.*

McGEE, Judge.

Clark Douglas Monin (plaintiff) filed a declaratory judgment action on 26 September 2000 seeking coverage under the uninsured motorists coverage and medical payment provisions of a Peerless Insurance Company (Peerless) policy of motor vehicle liability insurance (the Peerless policy) issued to plaintiff's father, James F. Monin. The complaint also sought a declaration of the rights of the parties under a motor vehicle liability insurance policy issued by Allstate Insurance Company or Allstate Indemnity Company (the Allstate policy) to Timothy Schwarz (Schwarz).

Plaintiff alleged in his complaint that on 27 September 1997, while riding as a passenger in an automobile owned and operated by Schwarz, he was seriously and permanently injured when Schwarz, impaired by alcohol and driving at a high rate of speed, lost control of his automobile and hit a tree on the side of the road. After plaintiff sought coverage under both the Peerless policy and the Allstate policy, Peerless admitted issuance of the Peerless policy to plaintiff's father, and that the policy was in effect at the time of the accident. However, Peerless denied plaintiff was entitled to coverage under the policy. Allstate Insurance and Allstate Indemnity also denied coverage under the Allstate policy, claiming that the Allstate policy had been cancelled due to non-payment of renewal premiums.

Peerless filed a motion for summary judgment. Allstate Insurance and Allstate Indemnity also filed a motion for summary judgment, claiming that the Allstate policy had been cancelled due to non-payment of premiums prior to the accident on 27 September 1997. The trial court granted Allstate Insurance's and Allstate Indemnity's motion for summary judgment on 11 October 2001. In the same order, the trial court denied Peerless' motion for summary judgment.

Plaintiff's claim against Peerless was tried before a jury beginning on 13 March 2002. The evidence at trial showed that the Peerless policy provided uninsured/underinsured motorist coverage to plaintiff's father and to any "family member." "Family member" was defined in the Peerless policy to mean "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household." The sole issue submitted to the jury was whether plaintiff was a resident of the household of plaintiff's father, James F. Monin, within the meaning of the Peerless policy.

Plaintiff's father testified at trial that he is the owner and president of The Jim Monin Agency (the Agency), an independent insurance agency, which he had owned for twenty-two years. One of the insurers for which he was agent was Peerless. Through the Agency, plaintiff's father purchased the Peerless policy in the early 1980s and renewed the policy annually. The policy had a coverage period of 7 August 1997 to 7 August 1998. Plaintiff's father was the named insured on the policy.

Plaintiff was 24 years old in 1997. His parents owned and lived in a house located at 717 Wingrave Drive, Charlotte, North Carolina (the Wingrave Drive house), where they had lived for the previous twenty-four or twenty-five years. Plaintiff had lived in the Wingrave Drive house continuously from the time the house was built in 1978 through his second year in college. Plaintiff graduated from high school in 1991 and attended Western Carolina University for two and a half years. After college, plaintiff stayed with various friends and would stay at the Wingrave Drive house for various lengths of time. Plaintiff and his parents were all living in the Wingrave Drive house at the beginning of 1997 and at that time plaintiff had been living continuously at the Wingrave Drive house for several months. He had his own bedroom, all of his clothes were at the Wingrave Drive house, and he had a key with full access to the house.

In January 1997, plaintiff left Charlotte to move to Florida to begin a career as a professional golfer. Plaintiff stayed in Florida until August 1997, when he returned to Charlotte after his attempt to become a professional golfer was unsuccessful. Plaintiff called from Florida indicating to his father that he would like to come back to Charlotte and talk to him about working at the Agency. Plaintiff returned to Charlotte on 31 August 1997 and moved most of his clothes back into the Wingrave Drive house. Plaintiff got a job at Pine Lake Country Club (Pine Lake) and told his father he would also be

able to start working at the Agency on a part-time basis. Plaintiff also told his father that he would be sleeping most of the time at plaintiff's friends' place at 9001 Vicksburg Road (the Vicksburg Road house) because it was convenient to Pine Lake.

Plaintiff began working at the Agency during the daytime two or three days a week around 1 September 1997, and would then go to his Pine Lake job in the evening. Plaintiff began working full-time at the Agency on 22 September 1997. Plaintiff's father testified that if plaintiff's working for the Agency went well, plaintiff would become a permanent employee and would come to live at 717 Wingrave Drive. Before the date of the accident on 27 September 1997, plaintiff had spent one or two nights at the Wingrave Drive house and had eaten three or four meals there since his return from Florida. During the first week of plaintiff's working full-time at the Agency, plaintiff's father let plaintiff use his car. Plaintiff would drive to the Wingrave Drive house in the morning from the Vicksburg Road house to pick up his father and then would drive them to the Agency. After his day of work at the Agency, plaintiff would drive himself to Pine Lake for his night job. Plaintiff's father's plan was to give plaintiff the car after a trial period of working at the Agency; however, the accident occurred on the Friday of plaintiff's first full week of work at the Agency. Following plaintiff's hospitalization from the accident, plaintiff returned to the Wingrave Drive house, where he lived continuously for approximately the next six months.

Plaintiff's father testified that while plaintiff was in Florida, plaintiff's father filled out plaintiff's 1996 income tax return on 19 March 1997, listing plaintiff's address as 717 Wingrave Drive, Charlotte, North Carolina. Plaintiff's father also filled out an application for short-term medical insurance for plaintiff on 28 March 1997, listing plaintiff's address as 717 Wingrave Drive, Charlotte, North Carolina. The insurance issued in response to the application listed the insured as "Clark D. Monin" and mailed the policy to "717 Wingrave Dr., Charlotte, NC 28270." When plaintiff's father prepared a "new hire" form for plaintiff stating that plaintiff had been hired on 22 September 1997 by the Agency, the address listed for plaintiff was 717 Wingrave Dr., Charlotte, North Carolina. Plaintiff's father also filled out a work sheet for plaintiff's salary payments, which showed plaintiff's address as 717 Wingrave Drive, Charlotte, North Carolina. In addition, plaintiff's father testified that while plaintiff was in Florida and after plaintiff returned to Charlotte, plaintiff received mail addressed to plaintiff at the 717 Wingrave Drive address.

Plaintiff's father testified that it was his intent that plaintiff was a resident of the family's household.

Plaintiff testified that he lived at an apartment off Monroe Road in Charlotte before he returned to live at 717 Wingrave Drive at the beginning of 1997. After living in the Wingrave Drive house for about three months, plaintiff moved to Florida where he got a Florida driver's license in order to gain employment there. Plaintiff moved back to Charlotte in August 1997. Plaintiff left 717 Wingrave Drive, Charlotte, North Carolina as his forwarding address when he moved from Florida. When plaintiff returned to Charlotte, he put his belongings in the Wingrave Drive house. Plaintiff did not stay at the Wingrave Drive house the first night back in Charlotte but stayed on the couch at his friend's house, the Vicksburg Road house. Plaintiff started working at Pine Lake on the night of 2 September 1997.

Tim Schwarz, Shawn Flanagan, and Brent Bishop were living in a three-bedroom house at 9001 Vicksburg Road, Charlotte, North Carolina. Plaintiff asked the three if he could stay on their couch due to the house's close proximity to Pine Lake and his need to save money. Plaintiff stayed on the couch at the Vicksburg Road house almost every night in September 1997 and kept his change of clothes for work in a small coat closet in the house. Plaintiff did not pay any rent or any share of utilities for the period he slept on the couch. Plaintiff did not have a key to the Vicksburg Road house, and on a couple of occasions had to sit outside the house for hours, waiting to get inside because he did not have a key. Plaintiff did most of his laundry during the month of September 1997 at the Wingrave Drive house; however, he did throw a shirt into the laundry at the Vicksburg Road house if he needed a clean shirt for work. Plaintiff ate most of his meals at Pine Lake; however, he ate three or four meals at the Wingrave Drive house, and also ate several times at the Vicksburg Road house. Plaintiff had a key to the Wingrave Drive house, a bedroom in the Wingrave Drive house, as well as furniture, clothes, and personal belongings in the Wingrave Drive house.

Plaintiff testified that the purpose of sleeping at the Vicksburg Road house was for the convenience of everyone involved. He said that since he got off work at Pine Lake between 10:00 p.m. and 12:00 midnight, he did not want to come in late and be disruptive at the Wingrave Drive house. Plaintiff also testified that it was more convenient for him to sleep on the couch than to have his friends drive him home after work at Pine Lake. However, during the week of 22 September 1997, when plaintiff began working full-time for the

Agency and had use of his father's automobile, he continued to sleep on the couch at the Vicksburg Road house, driving to the Wingrave Drive house in the mornings to pick up his father for work.

When plaintiff reapplied for a North Carolina driver's license, he listed 717 Wingrave Drive, Charlotte, North Carolina as his address. Plaintiff also opened a checking account during September 1997, listing his address as 717 Wingrave Drive. During September 1997, plaintiff's address for voter registration was 717 Wingrave Drive, Charlotte, North Carolina. Plaintiff testified that it was his intent to have his residence as 717 Wingrave Drive upon moving back to Charlotte from Florida.

Shawn Flanagan (Flanagan) testified that he, Schwarz and Brent Bishop lived at 9001 Vicksburg Road in September 1997 as tenants under a lease. The rent for the house was divided among the three of them. Plaintiff did not have his own room at the Vicksburg Road house, but slept on a couch. Plaintiff did not have any furniture at the Vicksburg Road house, and Flanagan never saw any mail for plaintiff addressed to the Vicksburg Road house. Flanagan never collected any money from plaintiff for rent or utilities.

At the close of plaintiff's evidence, plaintiff and Peerless each moved for a directed verdict, which the trial court denied. Defendant presented no evidence at trial. Both motions for directed verdict were renewed at the close of all the evidence and both were denied.

Plaintiff filed a request for special instructions at the close of the first day of trial. He requested the court instruct that: (1) "where there is ambiguity and the policy provision is susceptible of two interpretations, one of which imposes liability upon the company and the other which does not, the provision must be construed in favor of coverage and against the company"; (2) the word "resident" is ambiguous and when an insurance company uses such a term to designate those who are insured by the policy, all who may by any reasonable construction of the word, be included within the coverage afforded by the policy, should be given its protection; and (3) "[i]n cases involving insurance policies extending coverage to members of the insured's household, the questioned terms are to be broadly interpreted in favor of coverage[,] . . . that the phrase 'resident of the same household' has no absolute or precise meaning, and, if doubt exists as to the extent or fact of coverage, the language used in an insurance policy will be understood in its most inclusive sense." At the jury

instruction conference following the close of evidence, plaintiff's counsel emphasized the earlier request for special instructions. The trial court declined to give all of the requested special instructions. After the instructions were prepared, and again at the conclusion of the charge to the jury, plaintiff's counsel again made objections to the exclusion of the requested special instructions, both of which the trial court denied.

During the jury deliberations, the jury asked the trial court for additional instructions. The trial court gave a part of the charge again, and this time inserted additional language from plaintiff's special request. After further deliberation, the jury answered the single issue of whether plaintiff was a resident of the household of his father at the time of the accident on 27 September 1997, in favor of Peerless. The trial court, on its own motion, granted judgment notwithstanding the verdict in favor of plaintiff, which was entered on 3 April 2002. Peerless appeals from the judgment granting plaintiff judgment notwithstanding the verdict and plaintiff cross-appeals from the same judgment.

I.

[1] Peerless assigns as error the trial court's granting judgment notwithstanding the verdict for plaintiff on its own motion. We review the trial court's grant of a judgment notwithstanding the verdict *de novo. See In re Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999).

> The standard of review of a ruling entered upon a motion for judgment notwithstanding the verdict is "whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury."

*Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 249-50, 565 S.E.2d 248, 252 (2002), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003) (quoting *Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000)). A motion for judgment notwithstanding the verdict " 'should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' " *Id.* at 250, 565 S.E.2d at 252 (quoting *Norman Owen Trucking Inc. v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998)). We must determine whether there is more than a scintilla of evidence that plaintiff was not a resident of his father's household.

It is plaintiff's burden to show that he is a resident of his father's household, allowing him to recover under his father's uninsured motorist coverage. *Brevard v. Insurance Co.*, 262 N.C. 458, 461, 137 S.E.2d 837, 839 (1964) ("In an action to recover under an insurance policy, the burden is on the plaintiff to allege and prove coverage."). As the sole issue in this case is coverage, defendant is not required to prove any issue in this case and may properly decline to present evidence, and may simply rely on cross-examination in order to show that plaintiff cannot meet his burden of showing he was a resident of his father's household by a preponderance of the evidence. *See Fonvielle v. Insurance Co.*, 36 N.C. App. 495, 499-500, 244 S.E.2d 736, 739, *disc. review allowed*, 295 N.C. 465, 246 S.E.2d 215 (1978). Our Courts have determined that the term "resident," when used in an insurance policy and not defined by that policy, although subject to several different meanings, does not automatically result in coverage but instead is subject to its most inclusive definition. *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 438-39, 146 S.E.2d 410, 416-17 (1966), *modified on other grounds*, 277 N.C. 216, 176 S.E.2d 751 (1970); *see also Fonvielle*, 36 N.C. App. at 497-98, 244 S.E.2d at 738 ("[A] rule of construction cannot supply a material element even in the case of a 'slippery' term as long as the term has some meaning."). Our State's courts have given several examples of this broad definition:

> "Resident. One who resides in a place; one who dwells in a place for a period of more or less duration. *Resident* usually implies more or less permanence of abode, but is often distinguished from *inhabitant* as not implying as great fixity or permanency of abode."

*Insurance Co.*, 266 N.C. at 438, 146 S.E.2d at 416 (quoting Webster's New International Dictionary (2d ed.));

> "Resident" is defined as "one who makes his home in a particular place." . . . "Reside" is defined as "to live in a place for an extended or permanent period of time."

*State Auto Prop. & Cas. Ins. Co. v. Southard*, 144 N.C. App. 438, 440, 548 S.E.2d 546, 548, *disc. review denied*, 354 N.C. 370, 557 S.E.2d 535 (2001) (quoting American Heritage Dictionary 1051 (2d ed. 1985));

> "Residence is dwelling in a place for some continuance of time, and is not synonymous with domicile, but means a fixed and permanent abode or dwelling as distinguished from a mere temporary locality of existence; and to entitle one to the character of a

'resident,' there must be a settled, fixed abode, and an intention to remain permanently, or at least for some time, for business or other purposes."

*Lumbermens Mutual Casualty Co. v. Smallwood*, 68 N.C. App. 642, 644, 315 S.E.2d 533, 535 (1984) (citation omitted);

"Resident" is a word with varying shades of meaning . . . . In every case, however, it requires some kind of abode.

*Marlowe v. Insurance Co.*, 15 N.C. App. 456, 460, 190 S.E.2d 417, 420, *cert. denied*, 282 N.C. 153, 191 S.E.2d 602 (1972). Because the word "resident" is subject to several definitions, we must use the most inclusive definition. *See C. D. Spangler Constr. Co. v. Industrial Crankshaft & Eng. Co.*, 326 N.C. 133, 152-53, 388 S.E.2d 557, 569 (1990). It is with these principles in mind that we must now determine whether there is more than a scintilla of evidence that plaintiff was not a resident of his father's household on 27 September 1997.

The undisputed evidence showed that plaintiff slept at the Wingrave Drive house a maximum of three nights from the time he returned to Charlotte until he was injured in the accident, and that the remainder of the nights plaintiff slept at the Vicksburg Road house. On cross-examination, plaintiff's father agreed that he had a discussion with plaintiff before 27 September 1997, "that if things worked out with [plaintiff] working full time for [his father], and things appeared to be going well, that [plaintiff] was either going to move back in with [his father] or move in with [plaintiff's] brother." Plaintiff's father also agreed that as of 27 September 1997, plaintiff "hadn't moved back in with [his father] because [plaintiff] still hadn't established that track record." Further, although plaintiff stated a major reason he was sleeping at the Vicksburg Road house was because he did not have an automobile and did not want to inconvenience everyone, the week before the accident, when plaintiff's father had given him an automobile to drive, plaintiff continued to sleep at the Vicksburg Road house. There was testimony by plaintiff that the situation at the Vicksburg Road house was going to continue "until [plaintiff] found a permanent residence." Finally, although plaintiff presented documents showing his address as 717 Wingrave Drive, through cross-examination defendant showed that: some of the documents were not relevant to establishing plaintiff's residence; the address listed on the documents had been 717 Wingrave Drive when plaintiff was actually living in Florida; and plaintiff's address was still

MONIN v. PEERLESS INS. CO.

[159 N.C. App. 334 (2003)]

listed on documents as 717 Wingrave Drive at the time of trial, when plaintiff was actually living in a new apartment and, as plaintiff admitted, was no longer a resident of the Wingrave Drive house. In a jury trial concerning the "residency" of a plaintiff for insurance coverage purposes, the trial court submits to the jury, for its determination, questions that can only be resolved by a weighing of the evidence. *Great American Ins. Co. v. Allstate Ins. Co.*, 78 N.C. App. 653, 657, 338 S.E.2d 145, 147-48, *disc. review denied*, 316 N.C. 552, 344 S.E.2d 7 (1986).

We hold that the testimony outlined is more than a scintilla of evidence that plaintiff did not reside at 717 Wingrave Drive, Charlotte, North Carolina on 27 September 1999. It was, therefore, error for the trial court to grant judgment notwithstanding the verdict for plaintiff.

II.

[2] Plaintiff also filed a cross-appeal in the present case, assigning as error the trial court's failure to use his requested special instructions and the trial court's failure to give a peremptory instruction. "Proper notice of appeal requires that a party 'shall designate the judgment or order from which appeal is taken . . . .' " *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990) (quoting N.C.R. App. P. 3(d)). This Court does not acquire jurisdiction to hear the appeal without proper notice. *Id.* (citation omitted). In this case, plaintiff's notice of appeal stated that he was appealing from the trial court's grant of a judgment notwithstanding the verdict "entered on April 2, 2002." Nowhere in the notice of appeal does it indicate plaintiff wished to appeal from the trial court's denial of plaintiff's request for special instructions or a peremptory instruction. Plaintiff's notice of appeal does not properly present these issues for review. *See id.* ("Notice of appeal from denial of a motion to set aside a judgment which does not also specifically appeal the underlying judgment does not properly present the underlying judgment for our review.").

Even if notice of appeal is faulty, "we may liberally construe a notice of appeal in one of two ways to determine whether it provides jurisdiction . . . ." *Id.* First, the notice of appeal should not be found faulty if, despite a mistake in designation, " 'the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake.' " *Id.* at 156-57, 392 S.E.2d at 424 (citations omitted). In the present case it cannot be "fairly inferred" from the face of the notice of appeal that plaintiff intended to appeal from anything other than the judgment notwithstanding the

verdict. *Id.* at 157, 392 S.E.2d at 424. The second exception concerns technical compliance with the procedural requirements in filing papers with the court.and does not apply in this case. *Id.* at 157, 392 S.E.2d at 424 (citation omitted). We, therefore, have no jurisdiction to hear plaintiff's cross-appeal and it must be dismissed.

In light of our determination of defendant's first assignment of error and plaintiff's cross-appeal, we need not address defendant's remaining assignments of error.

In summary, we reverse the decision of the trial court granting judgment notwithstanding the verdict for plaintiff. We also dismiss plaintiff's cross-appeal. We remand this case for reinstatement of the jury's verdict for defendant Peerless and entry of judgment for defendant Peerless.

Reversed and remanded; cross-appeal dismissed.

Judges TYSON and CALABRIA concur.