TONYA LANNETTE WILLIAMS, ET AL., PLAINTIFFS V. ALVIN E. BELL, INDIVIDUALLY AND, AMERICAN BASS FISHING CLUB, INC., DEFENDANTS

No. COA03-1538

(Filed 4 January 2005)

**1. Appeal and Error— existence of insurance—irrelevant to agency—not argued in brief—abandoned**

In an action arising from a boat collision at a fishing tournament, the issue of the exclusion of plaintiffs' proffer regarding defendants' insurance was deemed abandoned because it was not argued in their brief. Even if it had been properly argued, insurance is irrelevant to the issue at hand (whether defendant Bell was defendant American's agent) and could induce the jury to decide the case on improper grounds.

**2. Evidence— agency—insurance policy—irrelevant**

In an action arising from a boat collision at a fishing tournament, plaintiff's proffer of an insurance policy was properly excluded because the issue to be decided was whether defendant Bell was acting as a director or agent of defendant American at the time of collision. Neither the existence of the policy nor its terms make the existence of agency more or less probable.

**3. Agency— fishing tournament—agency not found—evidence sufficient**

There was no error in denying plaintiffs' motion for a j.n.o.v. on the issue of agency in an action arising from a boat collision at a fishing tournament in which the jury found that defendant Bell (the organizer of the tournament) was not the agent of defendant American Bass Fishing Club. There was more than a scintilla of evidence from which the jury could have concluded that Bell was not American's agent, including that Bell was not in charge of the tournament and that his activities were personal at the time of the accident.

Judge ELMORE concurring.

Appeal by plaintiffs from judgment entered 10 April 2003 by Judge Lindsay R. Davis, Jr. in Rowan County Superior Court. Heard in the Court of Appeals 16 September 2004.

**WILLIAMS v. BELL**

[167 N.C. App. 674 (2005)]

*Wallace and Graham, P.A., by Christopher D. Mauriello, and Homesley Jones Gaines Homesley & Dudley, P.L.L.C., by Edmund L. Gaines and Mitchell P. Johnson, for plaintiffs-appellants.*

*Hedrick Eatman Gardner & Kincheloe, L.L.P., by Hatcher B. Kincheloe and Harmony Whalen Taylor, for defendant-appellee, American Bass Fishing Club, Inc.*

STEELMAN, Judge.

Plaintiffs appeal the trial court's ruling excluding evidence of an insurance policy of defendant, American Bass Fishing Club, Inc. (American). Plaintiffs also appeal the trial court's denial of their motion for judgment notwithstanding the verdict, in which they requested the trial court hold as a matter of law that an agency relationship existed between defendants Bell and American. For the reason discussed herein, we hold there was no error committed in the trial of this case.

On 20 June 2001, the Williams family went to High Rock Lake in Davidson County for a family outing. Shortly after arriving, sisters Tiffany and Candace Williams went on a boat ride with their mother's boyfriend, John Long. The three were on High Rock Lake, leaving the Buddle Creek access area, as Bell's boat approached the access area. Bell's boat collided with Long's boat, throwing both girls into the water. Long was able to rescue Tiffany, who was injured, but Candace drowned as a result of the accident.

The personal representatives of the Estate of Candace Williams brought this action pursuant to N.C. Gen. Stat. § 28A-18-2, seeking damages for wrongful death. Tonya Williams also sought damages for personal injuries suffered by the minor child, Tiffany Williams. Each of these claims was based on the negligence of defendant Bell. Plaintiffs also asserted that at the time of the accident, Bell was acting as an agent of American.

Since 2000, Bell was American's director for the Western District of North Carolina. As the district director, Bell oversaw the administration of local tournaments in his district. However, Bell was not an employee of American, he received no salary, and had no full-time duties as district director.

The accident took place during American's national championship tournament, which was held at High Rock Lake, starting on

17 June and ending three days later on 20 June 2001. Bell was the principal organizer of the tournament. He arranged for sponsorships, as well as for food and lodging for the contestants. However, once the tournament began, Bell participated in the tournament as a contestant and paid a registration fee. He had no duties related to tournament registration, received no compensation, and did not participate as an official of American during the weighing of the fish caught at the end of each day of the tournament. Furthermore, he was not authorized to answer any questions that arose during the contest concerning the rules and procedures of the tournament. Dan Jackson, American's national director, was in charge of the tournament.

On the day of the accident, Bell arrived at the tournament towing his personal boat. There were at least two boat access areas for High Rock Lake; Southmont, where the main tournament activities took place, and Buddle Creek. Bell put his boat into the lake at Buddle Creek to avoid the crowds at the Southmont access. The tournament began at approximately 5:30 a.m. Bell fished until around 3:30 p.m., when he returned to the Southmont dock to weigh the fish he had caught that day. In this tournament, at the conclusion of each day's fishing, the fish were released back into the lake following the weigh-in. Dan Jackson asked Bell and a volunteer, Max Neal, to return the fish to the lake. Around 4:15 p.m., Bell and Neal took a pontoon boat out onto High Rock Lake and released the fish. Bell then returned to the Southmont dock, where his wife was waiting. At about 5:00 p.m. Bell and his wife got into Bell's personal boat, and proceeded from the Southmont access to the Buddle Creek access, where Bell's boat trailer was located. It was while Bell was going to the Buddle Creek access that the collision with the boat containing Candace and Tiffany Williams occurred.

The trial court submitted six issues to the jury, including the issue of whether Bell was acting as an agent of American at the time of the accident. At the conclusion of a ten-day trial, the jury: (1) found that Bell's negligence was the sole cause of the accident, (2) found that at the time of the accident Bell was not acting as the agent of American; and (3) awarded substantial damages to plaintiffs. Plaintiffs appeal.

[1] In plaintiffs' first assignment of error, they contend the trial court erred in sustaining the objection of American to two separate proffers made by plaintiffs. In order to discuss this assignment of error, it is necessary to review the proffers made by plaintiffs.

**WILLIAMS v. BELL**

[167 N.C. App. 674 (2005)]

During Bell's testimony, plaintiffs made a proffer outside of the presence of the jury that: (1) Bell had no personal insurance applicable to the accident; and (2) Bell saw on the Internet the amount of insurance coverage that American had in effect. Later in the trial, plaintiffs sought to introduce answers to interrogatories identifying American's insurance coverage, and to also introduce a copy of the insurance policy. Before the trial court, plaintiffs argued that the existence of the insurance policy "goes to the issue of whether this gentleman [Bell] was in fact his agent . . . ." On appeal, plaintiffs contend the "mere fact the alleged principal obtained insurance which covered 'executive officers and <u>directors</u>', was evidence enough to weigh and influence the jury's decision on this issue[,]" based on the following language contained in the insurance policy (emphasis in original).

Section II:—WHO IS AN INSURED

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors.

Rule 401 of the Rules of Evidence provides the general test for relevant evidence. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2004).

Rule 404 and the rules that follow in Article 4 of Chapter 8C, deal with situations that occur with sufficient frequency to justify a specific rule. N.C. Gen. Stat. § 8C-1, Rule 401 official commentary (2004). Rule 411 is such a rule, dealing with the admissibility of evidence of liability insurance. N.C. Gen. Stat. § 8C-1, Rule 411 (2004). The general rule is that the existence of liability insurance is not admissible to show a party acted negligently or wrongfully. *Id.* However, the rule does not require the exclusion of evidence of insurance for other purposes, such as proof of agency. *Id.* The official commentary to Rule 411 states that "[a]t best the inference of fault from the fact of insurance coverage is a tenuous one, as is its converse. More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." N.C. Gen. Stat. § 8C-1, Rule 411

official commentary (citing *McCormick on Evidence* § 168 (John W. Strong gen. Ed., 5th ed. 1999)). While Rule 411 does not prohibit the admission of evidence of liability insurance to establish agency, the evidence must still meet the relevancy requirements of Rule 401 to be admissible.

In deciding whether evidence of insurance should be received under Rule 411, a trial court should engage in the following analysis: (1) Is the insurance coverage offered for a purpose other than to show that a person acted negligently or otherwise wrongfully (Rule 411); (2) If so, is the evidence relevant to show that other purpose (Rule 401); and (3) If so, is the probative value of the relevant evidence substantially outweighed by the factors set forth in Rule 403.

While plaintiffs' first proffer is encompassed in their first assignment of error, it is not argued in their brief, and is therefore deemed abandoned. N.C. R. App. P. 28(b)(6). Even had plaintiffs properly argued this matter, whether defendant Bell had insurance is irrelevant to the issue of agency. Furthermore, the amount of coverage provided by the insurance policy, standing alone, in no way establishes that defendant Bell was an agent for American. Such evidence could only serve to induce the jury to decide the case on improper grounds. This evidence was not relevant to the issue of agency and was properly excluded by the trial court.

[2] Plaintiffs' second proffer was of the insurance policy. On appeal, our review is limited to whether the trial court abused its discretion in excluding the evidence. *Carrier v. Starnes*, 120 N.C. App. 513, 519, 463 S.E.2d 393, 397 (1995). In order for this Court to conclude that the trial court abused its discretion, we must find that the judge's decision " 'lacked any basis in reason,' " or " 'was so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* at 520, 463 S.E.2d at 397 (citations omitted). The issue presented to the jury was not whether Bell was a director of American. The evidence was uncontradicted that he was a director. Rather, the issue to be decided by the jury was whether Bell was acting as a director or agent of American at the time of the collision. Neither the existence of the insurance policy, nor the terms of that policy make the existence of agency more or less probable. In this case, the insurance policy was not relevant to the issue of agency under Rule 401, and therefore, the trial court properly excluded this evidence. While the policy does state that directors are insured, it is subject to the express limitation: "but only with respect to their duties as your officers and directors."

**WILLIAMS v. BELL**

[167 N.C. App. 674 (2005)]

This limitation eliminates any possible relevance of the insurance policy to the issue of agency. Instead, this provision merely restates the issue to be decided by the jury.

The evidence of insurance, as presented to the trial court in the context of the particular facts of this case, was not relevant to the issue of agency. The evidence not being relevant, it was unnecessary for the trial court to perform the balancing test under Rule 403.

The trial court did not err in sustaining American's objection to this evidence, as this ruling did not lack for any basis in reason, nor was it "so arbitrary that it could not have been the result of a reasoned decision." *Carrier*, 120 N.C. App. at 520, 463 S.E.2d at 397.

[3] In plaintiffs' second assignment of error, plaintiffs contend the trial court erred in denying their motion for judgment notwithstanding the verdict and for a new trial. We disagree.

Initially, we note that plaintiffs failed to argue in their brief that the trial court erred in denying their motion for a new trial, and that contention is deemed abandoned. N.C. R. App. P. 28(b)(6).

In reviewing the denial of a judgment notwithstanding the verdict, our review is limited to whether, upon examination of all the evidence in the light most favorable to the non-moving party, and giving the non-moving party the benefit of every reasonable inference, the evidence is sufficient to be submitted to the jury. *Monin v. Peerless Ins. Co.*, 159 N.C. App. 334, 340, 583 S.E.2d 393, 397 (2003). If there is more than a scintilla of evidence to support the non-movant's position, the court should deny a motion for judgment notwithstanding the verdict. *Id.* at 340, 583 S.E.2d 398. Stated another way, if there was conflicting evidence as to whether defendant Bell was acting as an agent of American at the time of the accident, then the trial court was required to submit this issue to the jury for resolution. *See McLamb v. Beasley*, 218 N.C. 308, 320, 11 S.E.2d 283, 291 (1940).

It is undisputed that Bell was a director for American and was one of the primary organizers of the National Tournament held in 2001 at High Rock Lake. However, Bell was not in charge of the tournament, and in fact played no part in the tournament other than as a contestant. The only assistance Bell provided was to return the fish caught that day back into the lake, at the request of the national tournament director. After Bell and a volunteer finished this task, they returned to the Southmont dock. Bell and his wife then got into Bell's

personal boat and proceeded to the Buddle Creek access, where Bell had left his boat trailer. It was while returning to the Buddle Creek access area that the collision with the Williams boat occurred.

Bell's activities on 20 June 2001 were of a personal nature, as a contestant in the tournament, with the exception of the time that he returned the fish to the lake on behalf of American. There was ample evidence from which the jury could have found that Bell's activities on behalf of American had terminated once he returned to the Southmont access area, got into his personal boat with his wife, and proceeded to the Buddle Creek access area. *See McIlroy v. Motor Lines*, 229 N.C. 509, 512-13, 50 S.E.2d 530, 530-31 (1948) (reversing the jury's verdict against the employer because the evidence showed the employee was acting solely for his own purpose where the employee was driving the company truck to visit his aunt when the accident occurred, thus there was a total departure from the employer's business).

The evidence reveals that Bell had completed the task of returning the fish to the lake for American and had resumed his own personal activities at the time of the accident. As a result, there was more than a scintilla of evidence from which the jury could have concluded that Bell was not acting as the agent of American at the time of the collision. The trial court properly denied plaintiff's motion for judgment not withstanding the verdict.

Plaintiffs cite the case of *Keziah v. Monarch Hosiery Mills*, 71 N.C. App. 793, 323 S.E.2d 356 (1984) in support of the proposition that Bell was acting as an agent of American at the time of the accident. In *Keziah*, the plaintiff's deceased husband attended a golf tournament for the stated purposes of promoting golf socks sold by his employer, making future business contacts, and to play golf. On his way home from the tournament, the employee died in a plane crash and the deceased's widow filed a workers' compensation claim. The issue presented was whether the employee died while on a business trip or a personal trip. The employer filed a workers' compensation form, which stated the employee died on a "business trip." Although the employer pointed to evidence tending to show it was a personal trip, this Court held there was competent evidence to support the Industrial Commission's finding that the employee died in the course and scope of his employment. There is no holding in *Keziah* that is controlling on the issues presented in this case. Rather, this Court reached its decision in *Keziah* based upon the application of

the appropriate standard of review for appellate courts regarding decisions of the Industrial Commission. This assignment of error is without merit.

NO ERROR.

Judge CALABRIA concurs.

Judge ELMORE concurs in result with separate opinion.

ELMORE, Judge concurring.

While I concur in the result reached by the majority, I write separately to express my opinion that plaintiffs' proffered evidence of insurance was indeed relevant and admissible. However, as pointed out by the majority, our standard of review on a trial court's exclusion of evidence is abuse of discretion and despite my disagreement with the trial's court's decision to exclude, I do not believe it was an abuse of discretion. *See Carrier v. Starnes*, 120 N.C. App. 513, 519, 463 S.E.2d 393, 397 (1995).

The majority and I characterize the evidence presented at trial differently, and as a result end up with a different outcome on the question of relevancy. The majority's opinion seems to state that the evidence regarding Bell's agency with American was uncontradicted. I would argue otherwise.

One of the dispositive issues before the jury in this case was whether Bell was acting within the course and scope of his duties as an agent of American at the time of the accident. I would characterize the evidence at trial as displaying a decision by American to, in part, deny that Bell could possibly even be their agent, while also in part arguing that if he was their agent, then he had exceeded the course and scope of his duties at the time of the accident. It is American's first theory of the case, the denial of agency, that I think makes the insurance policy admissible; admittedly, the policy does nothing to resolve the issue of agency *at the time of the accident*.

Defendants had portions of deposition testimony by Dan Jackson, the National Tournament Director for American, read into the record at trial. These portions were relevant to the issue of whether Bell was American's agent.

> Question: Do local tournament directors, are they in charge of the national tournament?

> Answer: Not at all. If they are there they are there as competitors.

It is undisputed that Bell was a local tournament director and that the fishing tournament on High Rock Lake was a national tournament, not a local tournament. It was also undisputed that Bell was a participant in the tournament; what was in dispute was whether he had other duties as an agent of American on top of participating in the tournament. Jackson's deposition testimony went further:

> Question: All right, so local tournament directors can participate in the nationals tournament, correct?

> Answer: Correct.

> Question: And they can volunteer also to assist with the nationals tournament?

> Answer: Correct.

> Question: But there is no official duties of a local tournament, duties related to a national tournament?

> Answer: That is correct.

From this testimony it is evident that American, through its national director, was denying that Bell had any duty to perform for them.

Indeed, from the beginning of the majority's opinion they cast doubt as to whether Bell could even be in an agency relationship with American. The opinion points out Bell was "not an employee[,] . . . received no salary, and had no full-time duties as district director." Further they note that:

> Bell participated in the tournament as a contestant[,] paid a registration fee[,] . . . had no duties related to tournament registration, received no compensation, and did not participate as an official of American during the weighing of the fish caught at the end of each day of the tournament. Furthermore, [Bell] was not authorized to answer any questions that arose during the contest concerning the rules and procedures of the tournament. Dan Jackson, American's national director, was in charge of the tournament.

While the proffered evidence of insurance may not be highly probative of whether Bell was American's agent at the time of the

accident, it does, however, have a tendency to show that Bell might actually be an agent of American, a point I see as hardly "uncontradicted" by the record. *But see* N.C. Gen. Stat. § 8C-1, Rule 401 (evidence may still be relevant even if it is offered to prove an undisputed point). It would be difficult to convince a jury that a person was within the course and scope of his duties if the alleged principal denies that agency ever existed; you cannot exceed, complete, or go beyond the scope of an authorized relationship that never existed.[1] *See Davis v. North Carolina Shipbuilding Co.*, 180 N.C. 74, 76-7, 104 S.E. 82, 83 (1920) (evidence admissible to refute defendant's claim that a workman was not its employee); *Clarke v. Vandermeer*, 740 P.2d 921, 922-25 (Wyo. 1987) (evidence of employer's insurance policy covering drivers was admissible to show whether driver was an agent of employer); *Jacobini v. Hall*, 719 S.W.2d 396, 401 (Tex. Ct. App. 1986) (insurance evidence admissible to show ownership where ownership is denied).

Plaintiffs' evidence countered this position by showing that just before the accident Bell had released the fish that were caught during the tournament; returned the official tournament boat to the dock, which was actually his boat; and then got in his personal boat, the boat that he had fished in. American's tournament rules, as introduced through Bell's testimony, do not permit "participants" on the lake unless it is during the tournament. As ordered by National Director Jackson, Bell was on the lake after the tournament releasing the fish that were caught during the first day of the tournament.

Plaintiffs' evidence also showed that prior to the day of the incident, Bell was responsible for setting up the tournament, including securing sponsors, accommodations, and other incidental tasks necessary to a fishing tournament. He also had American logos on his personal truck, which he had driven both before and during the tournament. Further, after the boating accident had occurred and Bell returned to the hotel, he, Dan Jackson, and another local director met to discuss whether the tournament should even continue.

Plaintiffs had evidence linking the "agent" to the alleged principal, but in the face of the principal's denial of agency, were seeking evidence that would counteract that denial and establish a connection from the principal to the agent. Plaintiffs were seeking to use evidence of the insurance agreement taken out by American to cover the

---

1. At trial, when arguing on *voir dire* outside the presence of the jury, and again here on oral argument, counsel for American conceded that Bell was an agent of the organization, but from reviewing the record, he never offered that to the jury.

actions of its "directors" in order to refute American's denial of agency. *See Davis,* 180 N.C. at 76-7, 104 S.E. at 83; *Charter v. Chleborad,* 551 F.2d 246, 248-49 (8th Cir. 1977) (where credibility of expert is a key issue, it was reversible error to deny evidence of insurance to show bias); *Royal Oil Co. v. Wells,* 500 So. 2d 439, 448 (Miss. 1986) (where agency was "hotly contested," mention of insurance was relevant to agency, and its introduction would not violate Rule 411); *Clarke,* 740 P.2d at 922-25; *Jacobini,* 719 S.W.2d at 401; N.C. Gen. Stat. § 8C-1, Rule 401 and Rule 411 (2003).

Using the majority's analysis, I would determine that plaintiffs' evidence was indeed relevant, even if not sufficient or highly probative of the ultimate issue. Although reversing slightly the order of analysis, I would also determine that Rule 411 does not prohibit the exclusion of this otherwise relevant evidence.

North Carolina Rule of Evidence 411 states:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. *This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency,* ownership, or control, or bias or prejudice of a witness.

N.C. Gen. Stat. § 8C-1, Rule 411 (2003) (emphasis added). The key to application of this relevance rule is to understand the purpose for which evidence of insurance is being offered: if the purpose is to show liability then the evidence is inadmissible, but if the purpose of introduction is otherwise, then Rule 411 will not prohibit its use. *Williams v. McCoy,* 145 N.C. App. 111, 116-17, 550 S.E.2d 796, 801 (2001); *Warren v. Jackson,* 125 N.C. App. 96, 98, 479 S.E.2d 278, 279-80 (1997); *see generally* 1 Kenneth S. Broun, Brandis & Broun on North Carolina Evidence, § 108, p. 333 (5th ed. 1998).

Agency was a contested issue at trial and also the sole manner in which plaintiffs could prove American liable. Any introduction of insurance taken out by American over its directors could only be offered to further an agency relationship; plaintiffs were not presenting evidence American was directly negligent or liable in any fashion. Since evidence of insurance was offered to show a purpose other than liability, specifically, agency, then Rule 411 is not a bar to its admission.[2]

---

2. A trial court must be diligent about determining if the asserted purpose for offering evidence of insurance is merely pretextual or too attenuated, for then the gen-

Finally, I do not think that the probative value of the proffered evidence is substantially outweighed by its prejudicial effect. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2003). But, Rule 411 does not offer free reign over the use of an insurance policy. In particular, the amount of coverage, as solicited on *voir dire* in this case, is clearly prejudicial and serves no basis in determining agency. *See Reed v. Gen. Motors Corp.*, 773 F.2d 660, 663-64 (5th Cir. 1985) (Rule 411 does not generally permit the amount of coverage to be introduced); *Broun, supra*, at 334-35. Also, defendants can request a limiting instruction to the jury regarding the fact that evidence of insurance should only be considered for the purposes of determining whether an agency relationship exists.

Based on the foregoing, I would hold that the trial court erred in excluding the proffered evidence. However, I must agree with the majority that the trial court's exclusion was not an abuse of its discretion. Indeed, this panel, while agreeing on the analysis required by defendants' objection and plaintiffs' proffer of evidence cannot agree on the admissibility of the policy. It can hardly be said then that the trial court abused its discretion in choosing one reasoned avenue over another.

eral rule would be exclusion. *See, e.g., Smith v. Starnes*, 88 N.C. App. 609, 364 S.E.2d 442 (1988) (evidence that a car was insured 2 months prior to accident does not show agency, ownership, or control on the date of the accident).