LLOYD M. FONVIELLE & WIFE, BARBARA B. FONVIELLE v. SOUTH CARO-
LINA INSURANCE CO., ROGER BENTON & DELORES BENTON

No. 778SC546

(Filed 6 June 1978)

**Insurance § 85— automobile liability policy—non-owned automobile—resident of
same household**

    In an action to determine whether defendant daughter who had an acci-
dent while driving her brother's automobile was covered by a provision of
defendant father's automobile liability policy covering a relative of the insured
who is a resident of the same household as insured in the operation of an
automobile not owned by a relative who is a member of the same household,
the evidence was sufficient to support the court's finding that the daughter
was a "resident" of the insured father's household at the time of the accident
where it showed that the daughter had a job in Washington, D. C. and re-
turned to her father's home at Thanksgiving and Christmas vacations in 1974;
she had been at her father's home about two weeks when the accident occur-
red on 22 December 1974; the daughter considered her father's home as her
home, still received her mail there and had a phone there listed in her name
for which she did not pay; and before the accident, she intended to return to
Washington to work. However, the court erred in concluding that the
daughter was covered under the policy where the court made no finding as to
whether the brother who owned the automobile was a member of the insured
father's household.

APPEAL by defendants from *Smith, Judge (David I.).* Judg-
ment entered 11 March 1977 in Superior Court, WAYNE County.
Heard in the Court of Appeals 3 April 1978.

    Plaintiffs instituted a declaratory judgment suit to determine
whether defendant-father's automobile liability insurance policy
covered defendant-daughter who was driving her brother's
automobile when she hit plaintiffs. The brother had no automobile
insurance and plaintiffs had recovered under their own uninsured
motorists coverage. Defendant-father's policy insured "(b) with
respect to a *non-owned* automobile, (1) the named insured, (2) *any
relative*, but only with respect to a private passenger automobile
or trailer, provided his actual operation or (if he is not operating)
the other actual use thereof is with the permission, or reasonably
believed to be with the permission, of the owner and is within the
scope of such permission, . . ." [Emphasis added.] The policy de-
fined "relative" as "a relative of the named insured *who is a resi-
dent of the same household.*" [Emphasis added.] The policy did not

define the term "resident." It defined "non-owned automobile" as "an automobile or trailer *not owned by* or furnished for regular use of *either the named insured or any relative*, other than a temporary substitute automobile; . . ." [Emphasis added.] At pretrial conference, it was stipulated that the case would be decided without a jury, that defendant-father was a resident of 315 Denmark Street, Goldsboro, that defendant-driver Delores was his daughter, that she was driving her brother's car with his express permission and within the scope of that permission. Plaintiffs requested the following stipulation but did not receive it:

"(e) On the date of the accident as aforesaid, Roger Benton, Jr., [brother] was not a 'resident' as that phrase is used in the aforesaid automobile liability insurance policy and his 1973 Ford automobile was a 'non-owned automobile' as defined by policy #305 03 41 issued to Roger Benton, Sr."

Counsel for the parties agreed that the following were the issues to be determined and declared by the court:

"a) On December 22, 1974, was Delores Benton a resident of the same household of the named insured, Roger Benton, Sr., within the meaning of that phrase as used and defined in automobile liability insurance policy #305 03 41?

Answer: _____

b) On December 22, 1974, was Delores Benton an insured of the Defendant, South Carolina Insurance Company, pursuant to the terms of its insurance contract, policy #305 03 41, insured to Roger Benton, Sr.

Answer: _____ "

At trial plaintiffs presented both Delores Benton's deposition and her live testimony. Her testimony tended to show that she had lived with her parents until she was 20 or 21, that she then moved to a neighbor's house, staying there until moving to Washington, D. C. She found a job in a hotel in Washington and returned to her parents' home, in 1974, at Thanksgiving and Christmas vacations. She had been at her parents' home about two weeks when she had the accident. At the time of the accident, she considered her father's home on Denmark Street as her home, still received her mail there and had a phone listed in her

name for which she did not pay. Before the accident, she intended to return to Washington to work. After the accident she decided to stay with them until she was better, until May 1975. She testified that her brother Roger, Jr. lived in Brooklyn, New York. Delores's mother testified that Delores was living in Washington and was only visiting at the time of the accident.

The trial court found:

> "8. That from approximately two weeks prior to the date of the accident on or about December 22, 1974, until May, 1975, Delores Benton lived and was physically present in the home of her father, Roger Benton, Sr., at 315 Denmark Street in Goldsboro, North Carolina."

The court then concluded that Delores was a resident of her father's household at the time of the accident and was an insured of defendant-insurance company. From the order so adjudging, defendants appeal.

*Freeman, Edwards & Vinson by James A. Vinson III for plaintiff appellees.*

*Taylor, Warren, Kerr & Walker by Robert D. Walker, Jr. for defendant appellants.*

CLARK, Judge.

Under the terms of the automobile liability policy issued by defendant South Carolina Insurance Company to the named insured, Roger Benton, Sr., the operator of the automobile, Delores Benton, owned by her brother, Roger Benton, Jr., at the time of the collision on 22 December 1974, was an insured if (1) Delores Benton was a resident of the same household of the named insured, and (2) Roger Benton, Jr. was not a resident of the same household of the named insured.

The term "resident" is not defined in the insurance policy. Such term, if not defined, is capable of more than one definition and is to be construed in favor of coverage. *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410 (1966), has made this rule of construction clear:

> "When an insurance company, in drafting its policy of insurance, uses a 'slippery' word to mark out and designate

those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound." 266 N.C. at 437-8, 146 S.E. 2d at 416.

But a rule of construction cannot supply a material element even in the case of a "slippery" term as long as the term has some meaning. *Jamestown* considered "resident" a slippery term but was able to give some definition to its material elements. Intent to remain at a place seems determinative, although not intent to remain permanently. It is clear that the intent necessary to show residence is not that necessary to show domicile. *Jamestown, supra; Newcomb v. Insurance Co.*, 260 N.C. 402, 133 S.E. 2d 3 (1963). *Jamestown, supra,* citing 17A Am. Jur., Domicile, § 9, has it:

" ' "Residence" has many shades of meaning—from mere temporary presence to the most permanent abode. Generally, however, it is used to denote something more than mere physical presence, *in which event intent is material.* "Residence," as a legal term, is something more than the mere actual presence in a locality, even where it is not equivalent to domicile.

\*    \*    \*

'Any place of abode or dwelling place constitutes a residence, however temporary it may be, while the term "domicile" relates rather to the legal residence of a person or his home in contemplation of law.' " [Emphasis added.] 266 N.C. at 437, 146 S.E. 2d at 415. Also see 25 Am. Jur. 2d, Domicile, § 4.

In *Jamestown, supra,* an adult son, staying at his father's house until he found a place more suitable for his new job, was deemed a resident of his father's house. *Newcomb, supra,* emphasizing that residency is determinable on the basis of conditions existing

at the time the accident occurs, considered a husband and wife, staying with the wife's mother until one of the adult sons returned, residents of the mother's household even though the couple had a cottage-home elsewhere.

The evidence relating to the residency of defendant Delores Benton was conflicting. But in light of the foregoing decisions we find the evidence sufficient to support the finding of the trial court that Delores Benton was a resident relative of the household of the named insured, her father Roger Benton, Sr.

But the only evidence which speaks to the issue of whether Roger Benton, Jr., was a resident of the household was Delores Benton's testimony that her brother lived in Brooklyn, New York, and disappeared after the accident, and his mother's testimony listing the children living in the household at the time of the collision, which list did not include either Delores or Roger, Jr. The trial court made no finding of fact on the issue of whether Roger Benton, Jr., was a resident of the household of his father, the named insured. Since there was no such finding, there was no support for the conclusion that Delores Benton was an insured under the policy.

Plaintiffs make the argument that the burden of proof was on defendants to show that Roger Benton, Jr., was a resident of the household of the named insured, because the "non-owned automobile" provision requiring that the owner of the automobile involved in the accident be a nonresident was an exclusion. In an action on an automobile liability policy, the burden is upon insured to show coverage, and, if insured relies upon a clause excluding coverage, the burden is on the insurer to establish the exclusion. *Insurance Co. v. McAbee*, 268 N.C. 326, 150 S.E. 2d 496 (1966); 7 Strong's N.C. Index 3d, Insurance, § 108. But although the "non-owned automobile" provision, if not met, does exclude coverage, it is not itself an exclusionary provision. Unless a plaintiff alleges and proves facts sufficient to demonstrate the provision is met, he or she cannot be held to have made out a *prima facie* case for coverage, which case plaintiff must make before the burden to show non-coverage or exclusion is switched to defendant-Insurance Company. *McAbee, supra.*

The evidence of Roger Benton, Jr.'s, nonresidency may have been sufficient to support a finding of nonresidency by the trial

court, though the evidence from which Roger Benton, Jr.'s, intent could be inferred was sparse. *Jamestown, supra,* quotes with approval from a Washington case, *American Universal Insurance Company v. Thompson,* 62 Wash. 2d 595, 384 P. 2d 367 (1963) to support the seemingly anomalous result in the application of the rule of construction mentioned earlier that construction of the term "resident" in favor of coverage might cause a court to define very broadly in one case and very narrowly in another. In a situation such as the one *sub judice,* the rule could lead to a narrow definition of "resident" so as to exclude Delores's brother and permit his car to be a proper "non-owned automobile" while also leading to a broad definition of "resident" so as to include Delores as a covered relative operating a "non-owned automobile."

For error in the failure of the trial court to make proper findings of fact on the issue of the residency of Roger Benton, Jr., the conclusion that Delores Benton was an insured under the automobile liability policy was not supported by the findings of fact. The judgment is reversed and the cause remanded for a new trial on all issues consistent with this opinion.

Reversed and remanded.

Judges BRITT and ERWIN concur.