IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-35

Filed 31 December 2024

Orange County, No. 22 CVD 500297

CATHERINE HONACHER, Plaintiff,

v.

MICHAEL CLEMMONS UHLHORN, Defendant.

Appeal by defendant from order entered 29 June 2023 by Judge Sherri T. Murrell in District Court, Orange County. Heard in the Court of Appeals 14 May 2024.

*Catherine Honacher, pro se, plaintiff-appellee.*

*Law Office of Matthew Charles Suczynski, PLLC, by Matthew C. Suczynski, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from an Amended Domestic Violence Protection Order ("DVPO") entered on 29 June 2023. We affirm the Amended DVPO.

## I. Background

Plaintiff filed a form complaint and motion for DVPO in the trial court on 26 October 2022 alleging that Defendant had placed Plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. Plaintiff alleged that she and Defendant were persons of the opposite sex who were

not married but had lived together. Per the complaint, Plaintiff purchased a house in Hurdle Mills in 2014. Plaintiff contributed $305,000.00 to the purchase; Defendant contributed $60,000.00. The property was titled to Plaintiff, and "[t]here was never a discussion of how the property would be split if [they] separated." Eventually, the parties broke up. Defendant moved to Ohio in 2018. Plaintiff alleged that Defendant harassed her "to give him[] a ridiculous amount of money." Defendant made a report about her to Orange County Animal Control, which resulted in Plaintiff paying over $1,200.00 to update rabies vaccinations for every animal she owned. Defendant discontinued the propane gas service for Plaintiff's residence without warning. In court documents filed in Ohio, Defendant accused Plaintiff of stealing his investment in the Hurdle Mills house. Defendant placed liens on Plaintiff's Hurdle Mills property as well as real property Plaintiff owned in Madison, Rockingham County and then threatened to foreclose on the properties. Defendant filed a report with the Rockingham County Sheriff's Department and the North Carolina Insurance Commission alleging that Plaintiff had started a fire in her home in 2014 for the insurance proceeds, which a sheriff's detective and an Insurance Commission agent questioned her about in 2021. Plaintiff also alleged that Defendant slammed a vehicle door on her arm in December 2018 and threw a chair at her.

Defendant filed a verified, consolidated answer, motions to dismiss the complaint and DVPO motion, and "claims for relief" on 12 December 2022. Defendant's answer did not deny Plaintiff's allegation that "I live in Orange County,

North Carolina." Instead, Defendant alleged affirmatively that "Plaintiff is a resident of Orange County, North Carolina." Defendant also alleged he had not had any personal contact with Plaintiff since May 2019, excepting contact regarding the return of money she owed him and the return of his personal property. Defendant also claimed that Plaintiff was trying to sell the Hurdle Mills house without disclosing all the known problems with the property. He alleged he was therefore "in communications with the appropriate government agencies providing them with the evidence and his knowledge of these crimes."

The caption of Defendant's answer and motions to dismiss includes a "counterclaim for return of personal property, credit card charges, damages and rent of truck, and real estate investments[,]" although the body of the pleading does not clearly identify any legal basis for any counterclaims. Generally, Defendant sought to obtain his AR-15 rifle, an engagement ring, 20% of the value of the Hurdle Mills house (which he alleged was appraised at $2,000,000.00), an additional $78,000.00 for investments he had made in the home, $1,843.04 for reimbursement of Plaintiff's credit card charges, and $6,592.43 for the use of and damage to his truck. Defendant also sought compensatory and punitive damages for Plaintiff's intentional infliction of emotional distress.

The matter was brought on for hearing before the trial court on 23 March 2023. Plaintiff appeared *pro se*. Defendant did not appear but was represented by counsel. Defendant's counsel entered into a DVPO Consent Order on Defendant's behalf on 23

March 2023. The court ordered that Defendant "not assault, threaten, abuse, follow, harass (by telephone, visiting the home or workplace, or other means), or interfere with the plaintiff."

On 27 April 2023, Plaintiff filed a Motion for Order to Show Cause alleging that Defendant had made disparaging comments about her to realtors, the Triangle MLS, and the Orange County Environmental Health Agency with the intent to cause Plaintiff emotional and financial harm in violation of the 23 March 2023 DVPO Consent Order.

Defendant filed notice of appeal from the 23 March 2023 DVPO Consent Order on 22 April 2023. Defendant simultaneously filed motions to set aside the order, to dismiss the action for lack of jurisdiction, to vacate the 23 March 2023 DVPO Consent Order, and to sanction Plaintiff for violations of North Carolina General Statute Section 14-209 and North Carolina Rule of Civil Procedure 11. Defendant also filed an answer to Plaintiff's Motion for Order to Show Cause on 12 May 2023. In this verified pleading—contrary to his prior verified answer—Defendant alleged that Plaintiff had moved to Virginia and was no longer a resident of North Carolina when she filed the complaint for the DVPO.

The matters were heard before a trial court on 29 June 2023. Plaintiff appeared *pro se*. Defendant did not appear but was represented by counsel. The trial court concluded that Defendant had not consented to the DVPO Consent Order and vacated the order by Memorandum of Judgment/Order entered on 29 June 2023. The

court dismissed Defendant's remaining claims and motions due to a failure to prosecute. The court then conducted a re-hearing on Plaintiff's complaint and motion for DVPO and entered an "Amended" DVPO on 29 June 2023.[1]

In its Amended DVPO, the trial court found that Defendant had placed Plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress." The court described Defendant's conduct as contacting "numerous third parties" such as realtors and North Carolina and/or Orange County agencies, making complaints about Plaintiff's property "for the purpose of harassing . . . Plaintiff," and "also plac[ing] fraudulent liens on Plaintiff's Property." Plaintiff "suffered anxiety, sleeplessness, and suffered financial harm[.]" The court also found that Defendant had access to firearms—a Glock 19 and an AR-15.

The trial court concluded that Defendant had committed acts of domestic violence against Plaintiff, that there was danger of serious and immediate injury to Plaintiff, and that Defendant's conduct required his surrender of all firearms, ammunition, and gun permits to the sheriff for the effective period of the order. The court ordered Defendant to "not assault, threaten, abuse, follow, harass . . . , or interfere with . . . [P]laintiff"; to "not threaten a member of [P]laintiff's family or

---

[1] Although the DVPO is entitled as an "Amended" DVPO, the order does not amend a prior order. The trial court set aside the DVPO Consent Order, and the Amended DVPO on appeal is the only DVPO in this case. The trial court may have used this title to distinguish the 29 June 2023 DVPO from the former DVPO Consent Order. We will therefore use the same title in this opinion.

household"; and to stay away from the place where Plaintiff works and 1,000 feet from Plaintiff. The court further ordered that Defendant "shall not post about Plaintiff on any social media platform" and "shall not contact any third party regarding any property that is titled [to] Plaintiff and that he does not have title to." The Amended DVPO was to remain in effect until 29 June 2024. Defendant filed notice of appeal from the Amended DVPO filed on 29 June 2023.

## II. Jurisdiction

Defendant timely filed notice of appeal from the Amended DVPO. Although Defendant included various "claims" and motions in his answer and other pleadings, the trial court entered a separate order, also filed on 29 June 2023, setting aside the DVPO Consent Order filed on 23 March 2023 and dismissing Defendant's remaining claims and motions due to a failure to prosecute. Defendant filed notice of appeal only from the Amended DVPO and did not appeal the order dismissing his other claims and motions. Since Defendant's other claims and motions were dismissed, the Amended DVPO is a final order, and this Court has jurisdiction to review the order pursuant to North Carolina General Statute Section 7A-27(b)(2). *See* N.C. Gen. Stat. § 7A-27(b)(2) (2023) (noting that appeal lies of right directly to this Court "[f]rom any final judgment of a district court in a civil action").

Though the trial court's 29 June 2023 Amended DVPO was set to expire on 29 June 2024 prior to the filing of this Opinion, we do not dismiss the appeal as moot. This Court has determined that due to the "stigma that is likely to attach to a person

judicially determined to have committed domestic abuse[,]" DVPO orders that expire during the pendency of an appeal are not moot. *See Smith ex rel. Smith v. Smith*, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001) (citation, quotation marks, and brackets omitted).

### III.    Issues

On appeal, Defendant argues the trial court erred by denying his motion to dismiss the complaint and motion for DVPO and granting Plaintiff's motion for DVPO.

## A. Jurisdiction

Defendant argues that the trial court erred by denying the motion to dismiss the complaint and motion for DVPO because the court lacked personal jurisdiction over him and lacked subject matter jurisdiction over the action. We disagree.

### 1. *Personal Jurisdiction*

In challenging the trial court's exercise of personal jurisdiction over him, Defendant contends that he has not lived in North Carolina since 2018 and that he has not engaged in any activity within the State since then. contends the court's exercise of personal jurisdiction violated his due process rights.

Rule 12 of our Rules of Civil Procedure governs "Defenses and objections; when and how presented; by pleading or motion; motion for judgment on pleading." N.C. Gen. Stat. § 1A-1, Rule 12 (2023). Under subsection (b), "[e]very defense . . . to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading" except

those designated defenses a pleader may raise by separate motion. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b). A challenge to a court's exercise of personal jurisdiction is a designated defense which may be raised by a motion separate from a responsive pleading. *See* N.C. Gen. Stat. § 1A-1, Rule 12(b)(2). Where a party elects to raise a designated defense by separate motion, other motions may be joined. But, if a party making a motion "omits . . . any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted[.]" *See* N.C. Gen. Stat. § 1A-1, Rule 12(g). Specifically, the defense against the exercise of personal jurisdiction "is waived (i) if omitted from a motion in the circumstances described in section (g), or (ii) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." *See* N.C. Gen. Stat. § 1A-1, Rule 12(h)(1). *See, e.g., Harris v. Pembaur*, 84 N.C. App. 666, 670, 353 S.E.2d 673, 676 (1987) (holding the challenge to the exercise of personal jurisdiction was waived where the "defendant never raised the defense of lack of jurisdiction over the person either by way of a pre-answer motion or by including the defense in her answer").

In response to Plaintiff's 26 October 2022 complaint and motion for DVPO, Defendant filed a consolidated answer and motions to dismiss on 12 December 2022. Defendant moved the trial court "to dismiss . . . Plaintiff's Complaint and Motion for [DVPO] per [North Carolina General Statute Section 1A-1,] Rule 12b for [C]ivil

[P]rocedures [sic] because . . . Plaintiff failed to state a claim for which relief can be granted[.]" Defendant did not challenge the trial court's exercise of personal jurisdiction over him in his answer or in the motions to dismiss Plaintiff's complaint and motion of DVPO. Therefore, Defendant waived his right to challenge the court's exercise of personal jurisdiction over him. *See* N.C. Gen. Stat. §§ 1A-1, Rule 12(g) and (h)(1); *Harris*, 84 N.C. App. at 670, 353 S.E.2d at 676. We reject this argument.

### 2. *Subject Matter Jurisdiction*

In a challenge to the trial court's exercise of subject matter jurisdiction to address Plaintiff's complaint and motion for DVPO, Defendant argues that "the plain language of Chapter 50B requires the Plaintiff to be a resident of North Carolina, which she is not."

"Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted). "The issue of a court's subject matter jurisdiction may be raised at any time, even for the first time on appeal or by a court *sua sponte*." *Crago v. Crago*, 268 N.C. App. 154, 162, 834 S.E.2d 700, 707 (2019) (citations and quotation marks omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *Malone-Pass v. Schultz*, 280 N.C. App. 449, 457, 868 S.E.2d 327, 336 (2021) (citations and quotation marks omitted).

"The issuance and renewal of DVPOs, the means for enforcing them, and the penalties for their violation are governed by North Carolina's Domestic Violence Act, which is codified in Chapter 50B of the North Carolina General Statutes." *Comstock v. Comstock*, 244 N.C. App. 20, 22, 780 S.E.2d 183, 185 (2015). Under Chapter 50B, "[a]ny person residing in this State may seek relief under this Chapter by filing a civil action . . . alleging acts of domestic violence against himself or herself[.]" N.C. Gen. Stat. § 50B-2(a) (2023).

Though "[t]he words 'resident,' 'residing' and 'residence' are in common usage and are found frequently in statutes, contracts and other documents of a legal or business nature[,] [t]hey have . . . no precise, technical and fixed meaning applicable to all cases." *N. Carolina Farm Bureau Mut. Ins. Co. v. Lowe*, 180 N.C. App. 215, 219, 636 S.E.2d 207, 209 (2006) (citation and quotation marks omitted). "When interpreting undefined words or phrases, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Matter of Oak Meadows Cmty. Ass'n*, 293 N.C. App. 92, 96, 899 S.E.2d 404, 407 (2024) (citation and quotation marks omitted). "Residing" has been defined as "1. To live in a place permanently or for a long period. 2. To be inherently present; exist. 3. To be vested, as a power or right." *Residing*, American Heritage College Dictionary (3rd ed. 1993); *see also generally Fonvielle v. S.C. Ins. Co.*, 36 N.C. App. 495, 498, 244 S.E.2d 736, 738 (1978) (observing that "'[r]esidence' has many shades of meaning – from mere temporary presence to

the most permanent abode. Generally, however, it is used to denote something more than mere physical presence, in which event intent is material[]" (emphasis omitted)).

Within the complaint and motion for DVPO, Plaintiff alleged she lived in Orange County. Defendant's first verified answer did not deny this allegation but instead alleged affirmatively that "Plaintiff is a resident of Orange County, North Carolina." Thus, Defendant made a judicial admission that Plaintiff was a resident of Orange County, North Carolina; this judicial admission is binding upon the parties and the trial court. *See Buie v. High Point Assocs. Ltd. P'ship*, 119 N.C. App. 155, 158, 458 S.E.2d 212, 215 (1995) ("An admission in a pleading which admits a material fact becomes a judicial admission in the case. It has the same effect as a jury finding and is conclusive upon the parties and the trial judge." (citations omitted)). Later, in his motions to vacate the DVPO Consent Order and in his answer to Plaintiff's Motion for Order to Show Cause, Defendant alleged Plaintiff was not a resident of Orange County, as she had moved to Virginia before filing the complaint seeking a DVPO.

But even if the fact of Plaintiff's residence in North Carolina is not considered judicially admitted due to Defendant's conflicting allegations, Defendant did not present any evidence before the trial court. Plaintiff's testimony showed that she owned homes in both North Carolina and Virginia and regularly spent time in North Carolina. The record reflects Plaintiff's continued presence in the State and activities implying more than a mere physical presence. Thus, Plaintiff was "residing in the State" as contemplated under North Carolina General Statute Section 50B-2. *See*

N.C. Gen. Stat. § 50B-2(a); *see also Fonvielle*, 36 N.C. App. at 498, 244 S.E.2d at 738. We also note that in the findings of fact, which are unchallenged on appeal, Defendant's actions which placed Plaintiff "in fear of continued harassment that rises to such a level as to inflict substantial emotional distress" were specifically directed against Plaintiff in relation to her North Carolina home. The trial court found Defendant had contacted a realtor, Orange County and North Carolina Agencies, the North Carolina real estate MLS, the Orange County Tax Office, and the North Carolina State Water Quality Department to make complaints regarding Plaintiff's property for the purpose of harassing her. We hold the trial court had subject matter jurisdiction over the DVPO action pursuant to North Carolina General Statute Section 50B-2(a).

We overrule Defendant's arguments challenging the trial court's subject matter jurisdiction and exercise of personal jurisdiction.

**B.  Grounds for Issuance of DVPO**

Defendant argues that the trial court erred by granting Plaintiff a DVPO. Defendant contends there were no findings of fact or evidence that his communications to third parties were directed to Plaintiff, that his emails to third parties served "no legitimate purpose," or that Defendant placed Plaintiff in fear of continued harassment such as to inflict substantial emotional distress. We disagree.

"We review both an *ex parte* DVPO and a DVPO to determine whether there was competent evidence to support the trial court's findings of fact and whether its

conclusions of law were proper in light of such facts." *Stancill v. Stancill*, 241 N.C. App. 529, 531, 773 S.E.2d 890, 892 (2015) (citation and quotation marks omitted). "Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal." *Bunting v. Bunting*, 266 N.C. App. 243, 249, 832 S.E.2d 183, 188 (2019) (citation and quotation marks omitted).

Under Chapter 50B of our General Statutes,

> [d]omestic violence means the commission of one or more of the following acts upon an aggrieved party . . . by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
> . . . .
>
> (2) Placing the aggrieved party . . . in fear of . . . continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress[.]

N.C. Gen. Stat. § 50B-1(a) (2023); *see also Keenan v. Keenan*, 285 N.C. App. 133, 138, 877 S.E.2d 97, 102 (2022) ("In other words, 'harassment, as defined in [N.C.G.S. §] 14-277.3A[,]' does not refer to the *whole* statute, as a reference to stalking would, but instead refers to an individual subpart dedicated to 'harassment' within a broader, section-wide definition of 'stalking.'" (alterations in original) (quoting N.C.G.S. § 50B-1(a)(2) (2021))). Under North Carolina General Statute Section 14-277.3A, harassment" is defined as

> [k]nowing conduct, including written or printed communication or transmission, telephone, cellular, or other wireless telephonic communication, facsimile

> transmission, pager messages or transmissions, answering machine or voice mail messages or transmissions, and electronic mail messages or other computerized or electronic transmissions directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose.

N.C. Gen. Stat. § 14-277.3A(b)(2) (2023). Civil harassment under Section 14-277.3A(b)(2) is comprised of five elements: "(1) knowing conduct (2) directed at (3) a specific person (4) that torments, terrorizes, or terrifies, and (5) serves no legitimate purpose." *Durham Cnty. Dep't of Soc. Servs. v. Wallace*, ___ N.C. App. ___, __, 907 S.E.2d 1, 6 (2024) (citation omitted). Defendant does not address elements 1, 3, or 4, and thus, abandons any challenge based on those elements.

### 1. *"Directed At"*

Defendant contends the trial court made no findings of fact that he directed his communications to Plaintiff or that the record contains evidence to support such a finding.

The element "directed at," is not statutorily defined under North Carolina General Statute Section 14-277.3A. However, this Court has held that as used in North Carolina General Statute Section 14-277.3A, the phrase contemplates a defendant's communications to a third party to induce action against a victim. *See id.* at ____, 907 S.E.2d at 4.

In its 29 June 2023 Amended DVPO, a form order, the trial court made the finding that Defendant placed Plaintiff "in fear of continued harassment that rises to

such a level as to inflict substantial emotional distress." Describing Defendant's conduct, the court found that

> [t]he Defendant has contacted numerous third parties, to include at least one realtor, Orange County NC Agencies, NC MLS, Orange County Tax Office, NC State Water Quality Department making complaints regarding [Plaintiff]'s property for the purpose of harassing the Plaintiff. Defendant has also placed fraudulent liens on Plaintiff's Property. The Plaintiff has suffered anxiety, sleeplessness, and suffered financial harm as a result.

In addition to Plaintiff's testimony presented at the hearing, Defendant's own allegations in his answer and counterclaims abundantly support the trial court's finding that his communications with various third parties were directed at Plaintiff. Defendant claimed he was trying to report "real estate fraud" by Plaintiff and to protect others from this alleged fraud. Defendant's answer to Plaintiff's Motion for Order to Show Cause, includes averments that he "contacted real estate agents, the Triangle MLS, and employees with the Orange County Environmental Health . . . to report the real estate fraud that the Plaintiff [wa]s trying to commit and protect the future buyer/victim of the real estate property from real estate fraud by the Plaintiff." During the 29 June 2023 hearing, Plaintiff testified that Defendant had made complaints about her property with the Orange County tax office and the North Carolina Water Quality Department.

The record supports the trial court's finding of fact describing Defendant's conduct and shows his intent to direct third parties to take action regarding Plaintiff's

property. This conduct comes within the meaning of "directed at" as contemplated under North Carolina General Statute Section 14-277.3A(b)(2). We overrule Defendant's contention that his communications to third parties were not directed at Plaintiff.

### 2. *Legitimate Purpose*

Defendant contends that there were no findings of fact or evidence that his emails to third parties served "no legitimate purpose." He argues that "the electronic mail [Defendant] sent to third parties was consistent in that it was expressing concern for inadequacy of the properties that [Plaintiff] was attempting to sell."

"Whether conduct served a legitimate purpose is a factual inquiry." *Bunting*, 266 N.C. App. at 250, 832 S.E.2d at 188 (citation omitted).

In his 12 December 2022 answer to Plaintiff's complaint and motion for DVPO, Defendant stated that "[i]f the Plaintiff would return to the Defendant his personal property, his 20% share of the $2,000,000 joint residence as agreed, his other investments in the joint residence, her credit card charges, rent and damages to his truck he would never communicate with her again."

In his answer to Plaintiff's Motion for Order to Show Cause alleging that Defendant had violated the trial court's 23 March 2023 DVPO Consent Order, Defendant pointed out that Plaintiff did not allege he had any contact with her. Moreover, he declared that his communications to "Plaintiff's real estate agents, the Triangle MLS, and employees with the Orange County Environmental Health" were

not prohibited. Defendant contended that he had acted to prevent the following harms due to Plaintiff's conduct:

18. The Plaintiff is attempting to sell the former joint residence without properly disclosing all of the major issues with the property including the fact that she illegally constructed apartments without any building permits and overloaded the septic system.

19. The only purpose the Defendant contacted the real estate agents, the Triangle MLS, and employees with the Orange County Environmental Health is to report the real estate fraud that the Plaintiff is trying to commit and protect the future buyer/victim of the real estate property from real estate fraud by the Plaintiff.

Plaintiff testified that her realtor terminated their sales contract after Defendant's communication. Also, when Defendant copied her on complaints, he filed with the Raleigh Department of Water Quality about her septic system and the Orange County building inspector about unpermitted apartments, he included commentary such as, "You are going to get in trouble. You are going to – you are going to jail for what you did."

Defendant's own allegations also support the trial court's finding of his purpose to harass Plaintiff. In addition to allegations regarding the property in Orange County, Defendant's many allegations against Plaintiff include that she "is a mentally unstable and dangerous criminal"; that she "intentionally burned down her own house" to profit from the insurance proceeds; that she "assaulted the Defendant's minor child"; that she "was very likely involved in either or both her husband's and/or

ex-husband's deaths"; that Plaintiff and her family members "are involved in illegal drugs whether dealing, manufacturing, possessing, and/or abusing"; and so on, for several more pages. Defendant neither appeared before the trial court nor presented any witness with evidence to support his contentions.

The record supports the trial court's finding of fact that Defendant acted "for the purpose of harassing the Plaintiff." *See Keenan,* 285 N.C. App. at 140, 877 S.E.2d at 103 ("Whatever persuasive value [the] Defendant's characterization of the events may have—that his actions served [a] legitimate purpose . . . —they do not establish that his actions were somehow legitimate as a matter of law or negate competing interpretations of his conduct. Indeed, the ability to torment a person while ostensibly targeting a nearby object makes conduct of this type especially appealing to a passive-aggressive harasser, producing the intended effect while maintaining deniability. This very phenomenon underscores the importance of the factfinder's credibility determination . . . . [W]e will not undermine that determination by speculating over a cold Record."). We will not substitute the trial court's determination for one based on this cold record, and we overrule Defendant's contention regarding the legitimacy of his conduct.

### 3. *Fear of Continued Harassment*

Defendant contends that there is no evidence or finding of fact that he placed Plaintiff in fear of continued harassment inflicting substantial emotional distress.

Again, Defendant did not testify or present any evidence, and Plaintiff's

evidence clearly demonstrated her fear of continued harassment. Plaintiff testified that Defendant had "been contacting agencies, complaining of behavior or property that's not his" since 2018 on "hundreds" of occasions. The record reflects multiple instances in which Defendant tried to instigate an investigation of Plaintiff's property by third parties—governmental agencies or realtors—with the intent to make Plaintiff pay substantial repair costs, incur legal liability, or hamper Plaintiff's attempt to sell the property.

Overall, the record shows Plaintiff owned the home in Orange County where the parties lived while they were together, she later decided to sell the home, and Defendant wanted to force her to pay him a substantial portion of the value of the property, even if he had no legally enforceable claim against her. Defendant's email to Plaintiff's real estate agent, dated 13 October 2022, warned of defects to the property structures that "probably exceed well over $100,000; possibl[y] more than $200,000" to repair. Plaintiff testified that Defendant contacted the Orange County building inspector on 13 October 2022 alleging that Plaintiff had constructed apartments on her property without a permit and then contacted the Raleigh Department of Water Quality on 19 October 2022 claiming her septic system was overburdened. Plaintiff testified that Defendant had filed a fraudulent lien against her property in Rockingham County in 2021 and another against her property in Hurdle Mills in 2022. Due to Defendant's conduct, Plaintiff suffers a "very bad anxiety problem now"; she had "started having panic attacks" and had trouble

sleeping. Also, these reports had "extremely interfered with [her] financial well-being." She testified that although Defendant was not entitled to anything from the sale of her home, she had "tried to settle with him. I was willing to settle with him. I had a check cut out for him." But he told her, "Even if we settle, I'll never leave you alone. I will never leave you alone."

Defendant's actions against Plaintiff might be more succinctly described as extortion: he sought to obtain a portion of the value of the home from her by intimidation and harassment. The record supports the trial court's finding that Plaintiff has suffered anxiety and sleeplessness due to Defendant's continuing, harassing conduct. The findings support the conclusion that Defendant's conduct constitutes "harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress." N.C. Gen. Stat. § 50B-1(a)(2). Defendant's contention is overruled.

## IV. Conclusion

The record and the trial court's findings of fact support the issuance of a DVPO under North Carolina General Statute Section 50B-1(a)(2). We affirm the trial court's 29 June 2024 Amended DVPO.

AFFIRMED.

Judges CARPENTER and THOMPSON concur.